IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

CHRISTIAN LICCIARDI,
an individual,

      Plaintiff,

v.

UNITED STATES OF AMERICA

      Defendant.

---

## COMPLAINT FOR:  MEDICAL MALPRACTICE

---

Plaintiff Christian Licciardi hereby states and alleges as follows:

## <u>INTRODUCTION</u>

This case arises from the negligent action and inaction of several physicians and medical facilities that ultimately resulted in life-altering brain injuries to plaintiff, Christian Licciardi ("Plaintiff"). Three of the parties found to be negligent in the treatment of Plaintiff include United States federal employees, Kyle Phillips, Mary S. Zickefoose and Valley-Wide Health Systems, Inc. (collectively referred to as the "United States"). Despite clear signs and symptoms that Plaintiff was suffering from a grave brain abscess, the United States failed to take the appropriate measures to remedy Plaintiff's condition. Due to the aforementioned negligence, Plaintiff now suffers from permanent brain damage and permanent neurological deficits. While numerous parties contributed to the harm suffered by Plaintiff, this complaint will concentrate on the

negligent actions of the United States and its employees, Valley-Wide Health Systems, Inc., Mary S. Zickefoose, and Kyle Phillips. A separate complaint has been filed against the other defendant-physicians and facilities in a parallel federal action in the United States District Court, District of Colorado, entitled, *Christian Licciardi v. Lutheron Hospital Association of the San Luis Valley d/b/a San Luis Valley Regional Medical Center et. al.*, Case No. 1:16-CV-3000-NYW. After this Complaint is filed and served, Plaintiff will seek leave of this Court to consolidate both Federal actions.

## THE PARTIES AND JURISDICTION

1.      Plaintiff Christian Licciardi ("Licciardi") is an individual, and resides in Riverside County, California.

2.      Defendant United States employs Valley-Wide Health Systems, Inc. by operation of the Federally Supported Health Centers Assistance Act, *see* 42 U.S.C. § 233 (g)-(n), Kyle Phillips, and Mary S. Zickefoose, through their employment with Valley-Wide Health Systems as a nurse practitioner and physician respectively. Kyle Phillips, Mary Zickefoose, and Valley-Wide Health Systems, Inc. will be collectively referred to as the "United States" or individually as "Phillips," "Zickefoose," and "Valley-Wide."

3.      On information and belief, each of the Defendants herein are agents and employees of each of the other Defendants, and proximately caused Plaintiff's damages while acting in such capacity.

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b)(1) because Valley-Wide, Phillips, and Zickefoose, at all times relevant to this Complaint, were employed by the United States and were negligent in the treatment and care of Plaintiff, thereby causing personal injuries to the Plaintiff during the course and scope of the employees' employment.  Moreover, the Court has jurisdiction to hear this matter, as Plaintiff has exhausted his administrative remedies pursuant to 28 U.S.C. §2675(a).

## STATEMENT OF FACTS

5.      On November 2, 2015, Licciardi visited the San Luis Valley Regional Medical Center ("SLV") emergency room with a headache and nausea.

6.      SLV staff sent Licciardi home encouraging him to monitor his ailment for the time being.

7.      The next day, November 3, 2015, the symptoms had not resolved.  Licciardi returned to the SLV emergency room complaining of a headache, pain to the left side of his face, and nasal congestion.  Licciardi was again sent home.

8.      The next day, November 4, 2015, Licciardi returned to the SLV emergency room complaining of increased left sided head pain in addition to his other symptoms. Licciardi was "groggy" and described symptoms of "paresthesia."

9.      On November 4, 2015, Licciardi underwent a CT scan of his head without contrast that revealed inflammation of the left nasal passages indicating sinusitis (i.e. an infection of the

left sinuses). Licciardi was prescribed Afrin and discharged with Compazine medication to treat nasal congestion, nausea, and vomiting respectively.

10.     The symptoms did not resolve, so Licciardi visited his primary care provider, Valley Wide, on November 7, 2015.  Although Valley Wide diagnosed Licciardi with an acute sinus infection accompanied by headache, nausea and fever, it merely provided Licciardi with medication and sent him home. On the same day, Licciardi was seen by Zickefoose and presented symptoms of blurred vision, fever, headache, and vomiting. Zickefoose was aware that Licciardi was prescribed affrin and a nausea medication at the emergency room, but neither medication helped. Zickefoose prescribed Licciardi additional medication, but did not refer him to the proper medical professional, such as an ear, nose, and throat specialist.

11.     The symptoms did not resolve, so Licciardi went back to the SLV emergency room on November 8, 2015, with his father, Joe Licciardi. Licciardi reported that his headache had been so severe that it caused him to vomit.

12.     Despite the fact that Licciardi's headache persisted and he was vomiting and suffering from pain to the left side of his face for a week, the SLV personnel seemed confident that Licciardi's symptoms were related to a concussion.

13.     Licciardi was then referred to Dr. William Cooper ("Dr. Cooper"), a neurologist employed at the Monte Vista Community Clinic, a health clinic under the control of SLV. Before Licciardi could even see Dr. Cooper, he made another visit to the SLV emergency room on

November 9, 2015, with the same symptoms.

14.     On November 9, 2015, Licciardi was seen by Phillips, a nurse practitioner at Valley-Wide. Valley-Wide is an employee of the Public Health Service, by operation of the Federally Supported Health Centers Assistance Act, *see* 42 U.S.C. § 233 (g)-(n). Phillips ordered an MRI of the head both with contrast and without contrast. An MRI with contrast more fully delineates the presence of any foreign matter and therefore is necessary to rule out such things as abscesses, pus, or empyema in the head. However, despite the order by Phillips for an MRI with contrast, he never followed through or confirmed that it was performed.

15.     On November 10, 2015, Licciardi returned to the SLV emergency room. Licciardi's symptoms included: severe headache, forehead swelling, neck pain, and fever. This time, Licciardi was admitted to the hospital. The admitting physician was Dr. Patrick Martin ("Dr. Martin").

16.     While admitted, an MRI and CT scan of the head, both without contrast were performed on November 11, 2015.

17.      Dr. Steven Hake ("Dr, Hake") analyzed the MRI and reported "bilateral maxillary mucosal thickening worse on the left." Dr. Jeffrey Freeman ("Dr. Freeman") analyzed the CT and did not find any abnormality. Neither Dr. Hake nor Dr. Freeman compared the scans of November 11 to the scan performed on November 4. If they had, they would have notice a worsening of the sinusitis between November 4 and November 11 as well as a significant increase in swelling of the front of the head between such dates.  In addition, the scans of November 11 showed that pus

appeared to be seeping into the brain resulting in the pooling of pus (known as an epidural abscess or empyema) in the brain.

18.     The presence of such foreign matter in the brain is a life-threatening emergency condition that must be addressed quickly. However, this condition was not addressed by Licciardi's medical providers as his treating nurses, physicians and radiologist either failed to perform or misdiagnose his scans, failed to conduct the proper comparisons of his previous scans, and thus misdiagnosed his condition.

19.     During the entire time that Licciardi was under the care of practitioners from Valley Wide, no practitioner recommended or secured an ENT consultation despite a clear showing that Licciardi was suffering from a severe sinus infection, and had been suffering from such sinus infection since November 2.

20.     Instead, Dr. Cooper, diagnosed Licciardi with post-concussive syndrome with a viral syndrome.  Dr. Cooper and Dr. Martin discharged Licciardi to home without resolving Licciardi's true sinus complications.

21.     Licciardi visited Valley-Wide on November 16, 2015.  He exhibited the same symptoms (severe headache, vomiting, left facial pain, swollen head) and also had a swollen tongue. At that time, he was again seen by nurse practitioner, Phillips. Phillips did not follow-up on why an MRI with contrast, that he previously ordered, was not done. Neither did Phillips suggest, order, or arrange for Licciardi to be seen by an ENT.  Instead, Phillips continued to treat

him as if he had benign sinusitis or viral meningitis, which is a self-correcting condition not requiring immediate medical intervention.  In addition, Phillips continued to prescribe numerous medications to mask the symptoms instead of taking the proper action to rule out or treat the true life-threatening conditions that were affecting Licciardi.

22.     Licciardi again visited Valley-Wide on November 19, 2015. He presented with the same symptoms. Again, he saw nurse practitioner, Phillips. Phillips again merely provided multiple medications to mask Licciardi's pain, but did nothing to discover, treat or rule out the true life-threatening conditions that Licciardi was suffering.

23.     Licciardi left for California on November 25, 2015 to visit his family for Thanksgiving.  Licciardi's symptoms and pain had not resolved but worsened, as he was running out of the multiple pain medications prescribed to him in Colorado (which only served to mask his true condition). On November 27, 2015, he visited Loma Linda University Medical Center ("LLUMC") where he was seen by an Emergency Department physician. Licciardi was sent home after an evaluation.

24.     On November 29, 2015, Licciardi again presented himself to LLUMC's emergency room and underwent imaging that revealed that he was suffering from a subdural empyema (brain abscess).

25.     Licciardi had to undergo a craniotomy to address the empyema.  This was only partially successful, and given the severity of the condition, Licciardi has had to undergo multiple

surgeries to his brain and has endured numerous strokes.

26.     Licciardi now suffers from permanent brain damage and permanent neurological deficits. Licciardi has lost all motor skills to right side of his body, starting from his head to his feet. Licciardi also has lost cognitive skills and cannot understand conversations, or communicate other than offering simple, short-phrased words.

27.     As a result of the Phillips and Valley Wide's negligence, Plaintiff has been damaged in an amount to be proven at trial.

## FIRST CAUSE OF ACTION
### (MEDICAL NEGLIGENCE)
### (BY LICCIARDI AGAINST THE UNITED STATES)

28.     Licciardi incorporates by reference all of the paragraphs set for the above.

29.     The United States failed to conform to the standard of care recognized in the community for the same medical professions practiced by Phillips, Zickefoose, and Valley-Wide. Said failure consists of, among other things:

    a.  Failing to rule out dangerous, serious, or life-threatening conditions and diseases and failing to implement the most effective treatments.

    b.  Failing to follow through and confirm that certain scans were performed.

    c.   Failing to properly take into the account the history of the patient such as comparing earlier scans to show the progression of a disease.

    d.   Not merely masking painful symptoms through a barrage of pain medicines.

    e.   Not making proper referrals to proper specialist.

    f.   Misdiagnosing the primary disease process.

    g.   Improperly releasing Licciardi from the hospital.

30.    As a result of the United States failure to practice within the standard of care practice, the United States failed to properly diagnose or treat the conditions and disease that Licciardi was suffering. As a proximate and legal result of this practice, Licciardi has suffered severe and significant damage which will affect him for the remainder of his life. Such damages, among other things, will require the presence of lifetime, 24-hour care.  Licciardi, once a healthy male of 22, is now unable to undertake even the simplest of daily activities such as walking or talking.

## WHEREFORE, LICCIARDI PRAYS AS FOLLOWS:

1.    With respect to all causes of action for compensatory damages in an amount to be proven at trial.

2.    For prejudgment interest and costs and attorney's fees.

3.    For such other and further relief as the Court deems just and proper.

DATED this 13th day of October, 2017.

Respectfully submitted,

**WELLMAN & WARREN LLP**
Scott W. Wellman (CA SBN 82897)
Chris Wellman (CA SBN 304700)

s/Scott Wellman
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
Tel: (949) 580-3737
Fax: (949) 580-3738
E-mail address:  swellman@w-wlaw.com
                cwellman@w-wlaw.com

Attorneys for Plaintiff, Christian Licciardi

**DEMAND FOR JURY TRIAL**

Licciardi hereby demands a trial by jury.

Dated: October 13, 2017

By: s/Scott Wellman
    Scott Wellman
    Chris Wellman
    Attorneys for Plaintiff, Christian Licciardi

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of October 2017 I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which automatically sent email notification of such filing to all counsel who have entered an appearance in this action:

| | |
|---|---|
| ROBERT C. TROYER<br>Acting United States Attorney<br>Assistant United States Attorney<br>1801 California Street, Suite 1600<br>Denver, CO 80202<br>Telephone: 303-454-0100<br>Attorney for United States,<br>U.S. Department of Justice, and<br>U.S. Department of Health and Human<br>Services | jacob.licht-steenfat@usdoj.gov |

By: /s/Scott Wellman

Scott Wellman